# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

KEN JOHANSEN, on behalf of himself and
others similarly situated,

        Plaintiff,

v.

NATIONAL GAS & ELECTRIC LLC,

        Defendant.

Case No. 2:17-cv-587

Judge Graham

## Opinion and Order

Plaintiff Ken Johansen brings this putative class action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. Johansen alleges that his residential telephone number is on the national Do Not Call Registry and that defendant National Gas & Electric LLC ("NG&E") violated the Act by calling him on June 13, 14 and 15, 2017.

This matter is before the court on NG&E's motion to compel arbitration. "In evaluating motions or petitions to compel arbitration, courts treat the facts as they would in ruling on a summary judgment motion, construing all facts and reasonable inferences that can be drawn therefrom in a light most favorable to the non-moving party." Raasch v. NCR Corp., 254 F.Supp.2d 847, 851 (S.D. Ohio 2003).

## I.

NG&E contends that on Tuesday, June 13, 2017, Johansen initiated a telephone call to NG&E's call center and enrolled in NG&E's fixed-rate electricity plan. Attached to NG&E's motion is an authenticated call log and transcript of the telephone call. (Docs. 21-3, 21-4). During the call, Johansen verified his service and billing address and responded "Yes" when asked if he understood that he was enrolling in NG&E's fixed-rate plan of 7.49¢ per kilowatt hour and a monthly fee of $5.95. He also authorized NG&E to perform the tasks necessary to switch over his electricity supplier. At the end of the call, he received a confirmation number for his enrollment.

Johansen was told that he would be receiving NG&E's "terms and conditions within the next few days confirming the information we discussed here today." (Doc. 21-4 at PAGEID#93). The Terms of Service were sent by first-class mail on Friday, June 16 from NG&E's office in Houston, Texas.

Paragraph 11 of the Terms of Service contains a mandatory arbitration clause, which provides, "Any claim, dispute or controversy, regarding any contract, tort, statute, or otherwise ("Claim"), arising out of or relating to this agreement or the relationships among the parties hereto shall be resolved by one arbitrator through binding arbitration administered by the American Arbitration Association . . . ." (Doc. 21-5 at ¶ 11).

The Federal Arbitration Act ("FAA") provides that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "The [FAA] establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself, or an allegation of waiver, delay, or a like defense to arbitrability." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983).

NG&E moves to compel arbitration and dismiss this litigation. In evaluating a motion to compel arbitration under the FAA, "a court has four tasks: first, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration." Stout v. J.D. Byrider, 228 F.3d 709, 714 (6th Cir. 2000).

The first inquiry – whether the parties agreed to arbitrate – is at issue here. State contract law governs issues of formation, such as validity, revocability, and enforceability, with respect to arbitration clauses. See Perry v. Thomas, 482 U.S. 483, 492 n. 9 (1987).

Johansen contends that arbitration was not among the terms or conditions discussed during the June 13, 2017 phone call. The Terms of Service document containing the arbitration provision was not mailed to him until June 16, after NG&E allegedly committed violations of the TCPA on June 13, 14 and 15. The document was never received by Johansen (because he provided NG&E with an incorrect mailing address – more on that later), but on June 27 Johansen emailed a NG&E representative requesting that NG&E "cancel any service enrollments I may have with your company." (Doc. 21-6). It is undisputed that NG&E honored his request.

The court agrees with Johansen that arbitration was not a term discussed during the June 13 phone call. The transcript of the call shows that the parties simply agreed that NG&E would supply electricity to Johansen at a particular rate and monthly fee. To this point, NG&E responds that the

2

Terms of Service document was an "accept-or-reject" contract that Johansen accepted by failing to timely give NG&E notice of rejection.

An accept-or-reject type of agreement is typical in situations, like the one here, where a consumer purchases a good or service over the phone, knowing the price point and nature of the good or service he is purchasing, but with the seller stating that the rest of the terms and conditions will follow. Accept-or-reject agreements have "been enforced by courts, including in contexts involving the sale of products and services by mail and telephone, . . . credit card agreements, and bank account agreements." Higgs v. Auto. Warranty Corp. of Am., 134 Fed. App'x 828, 831 (6th Cir. 2005) (citing cases and applying Ohio law). This type of agreement "'relies on the proposition that a contract is formed not at the time of purchase or earlier but rather when the purchaser either rejects by seeking a refund or assents by not doing so within a specified time, providing the purchaser with an opportunity to review the proposed terms.'" Id. (quoting Register.Com, Inc. v. Verio, Inc., 356 F.3d 393, 431 n.43 (2d Cir. 2004)).

NG&E's Terms of Service provided that the customer could cancel the agreement without penalty any time before midnight of the third business day after the document was received. (Doc. 21-5 at ¶ 5). NG&E argues that the document should have reached the address provided by Johansen on Wednesday, June 21, based on the time estimate (for first class mail from Houston to central Ohio) provided by the United States Postal Service's online "service standards map" tool. NG&E contends that, per the Terms of Service, Johansen had until midnight on Monday, June 26 to cancel and that his June 27 email was too late to reject the agreement.

The court is not persuaded that June 26 is the correct date by which Johansen was required to reject the agreement, for two reasons. First, NG&E has not submitted proof of when its mailing actually reached the address provided by Johansen – the Postal Service's service standards are "goals" and not guarantees. See USPS Service Standards, *available at* https://postalpro.usps.com/operations/service-standards (visited Dec. 14, 2017). Second, even assuming the mailing arrived on schedule, NG&E has not submitted any law or argument in support for the proposition that the three day deadline established in the Terms of Service provided Johansen with a reasonable opportunity to review and reject the proposed terms. See Higgs, 134 Fed. App'x at 831 (stating that the purchaser must have an opportunity to review proposed terms). It is true that courts often enforce the deadlines stated in proposed terms and conditions documents, but the cases cited by NG&E involve substantially longer time windows than the one here. See Higgs, 134 Fed. App'x at 832 (10 days); Rankin v. Ashro, Inc., No. 2:15-cv-453, 2015 WL

3

1879959, at *2 (S.D. Ohio Apr. 23, 2015) (15 days); Hill v. Gateway 2000, 105 F.3d 1147, 1148-49 (7th Cir. 1997) (30 days).

More importantly, even if June 26 is the right deadline and Johansen was one day late in notifying NG&E of his rejection of the Terms of Service, NG&E waived any timeliness-based objection by accepting and honoring Johansen's rejection of the agreement. A party may waive a contract term by words or conduct. See White Co. v. Canton Transp. Co., 131 Ohio St. 190 (Ohio 1936); Jamestown Vill. Condominium Owners Ass'n v. Klausman, No. 56516, 1990 WL 4473, at *3 (Ohio Ct. App. Jan. 25, 1990) (holding that issue of whether and when defendant received written notice of the sale of a condominium was "immaterial" because defendant's conduct in recognizing the new owner waived the written notice requirement). Again, there is no dispute that NG&E terminated service after Johansen sent his June 27 email. NG&E did not provide him with electric service, nor did it send him a bill for service or charge him a cancellation penalty, which the Terms of Service provided for when a customer cancelled more than three business days after receiving the Terms in the mail. (Johansen Aff. at ¶ 19). The court finds no legal basis for NG&E to single out the arbitration clause for enforcement when it treated the rest of the agreement as having been rejected.

Accordingly, NG&E' motion to compel arbitration (doc. 21) is denied.

## II.

The court now turns to a troubling issue that the parties' briefing on the motion to compel arbitration brought to light. The statements of Johansen in his affidavit and the representations of his legal counsel in plaintiff's response brief reveal that this lawsuit is based on a ruse.

Johansen admits that he "posed" as an interested customer when he received a telemarketing call from NG&E on June 13, 2017. (Johansen Aff. at ¶ 5). It is his "typical practice to pose as a customer" whenever he receives a telemarketing call. (Id.) Johansen disputes NG&E's contention that he was the one who initiated the contact – Johansen says NG&E called him first – but he concedes that when the initial phone call got disconnected, he called NG&E back in order to complete the enrollment process. (Id. at ¶¶ 3, 9).

Johansen states that he had no actual desire to enroll with NG&E. (Id. at ¶ 4). As plaintiff's counsel puts it, Johansen "had no intention of becoming an NG&E customer" but played along "as he typically does." (Doc. 25 at 2-3). Over the phone, Johansen affirmatively took the steps necessary to seemingly enroll with NG&E, including confirming his service and billing address and

4

providing his account number with his existing electrical provider, as well as responding "Yes" when he was asked to verify that he was authorized to enroll his account in the program and that he understood that he was in fact enrolling and was authorizing NG&E to switch his service. (Doc. 21-4).

But Johansen deliberately provided NG&E with an incorrect address and an incorrect account number. (Johansen Aff. at ¶¶ 7, 8). The information he provided corresponded to a prior residence which he had moved out of four years prior. (Id.)

According to Johansen, NG&E called him again on June 14 and 15. And Johansen committed the same ploy of enrolling during the June 15 call as he did on June 13. (Johansen Aff. at ¶ 14).

Plaintiff's counsel observes that Johansen "knew that no matter what happened, he would not receive NG&E's services" because he had misrepresented his address and account number. (Doc. 25 at 9).

The court finds that the admissions of plaintiff in his affidavit and response brief cast serious doubts on his fitness to serve as an adequate class representative. These admissions also appear to undermine the viability of his cause of action under the TCPA. Even if NG&E initiated the first call on June 13, an individual does not have a cause of action until he has received "more than one telephone call within any 12-month period" from the same entity. 47 U.S.C. § 227(c)(5) (pertaining to the Do Not Call Registry). Although Johansen alleges that NG&E called him again on June 14 and 15, a call is excluded from the definition of a "telephone solicitation" if the caller has "an established business relationship" with the recipient of the call. Id. at § 227(a)(4).

An established business relationship is "formed by a voluntary two-way communication between a person or entity and a residential subscriber with or without an exchange of consideration, *on the basis of the subscriber's purchase or transaction* with the entity within the eighteen (18) months immediately preceding the date of the telephone call *or on the basis of the subscriber's inquiry or application* regarding products or services offered by the entity within the three months immediately preceding the date of the call, which relationship has not been previously terminated by either party." 47 C.F.R. § 64.1200(f)(5) (emphasis added).

Johansen's relationship with NG&E appears to fit within this definition both because he completed the enrollment process on June 13 (the purchase or transaction) and because he, after getting disconnected from the initial phone call, called back to inquire about completing the process for enrolling in NG&E's services (the inquiry or application). Johansen may have privately

5

understood that his purchase and inquiry were not in earnest and that he would not receive NG&E's services. But his deceptive conduct gave NG&E an objectively reasonable basis for believing that he had established a business relationship with NG&E on June 13.

### III.

In light of plaintiff's factual admissions, the court finds that discovery should be stayed on plaintiff's wide-ranging requests for class discovery. NG&E's motion to stay class discovery (doc. 23) is thus granted.

PLAINTIFF IS ORDERED TO SHOW CAUSE WITHIN 30 DAYS from the date of this Order why the complaint should not be dismissed as meritless. NG&E may file a brief within 14 days of plaintiff's response to the show cause order.

s/ James L. Graham
JAMES L. GRAHAM
United States District Judge

DATE: December 20, 2017