**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| KEN JOHANSEN on behalf of himself and others similarly situated, | : : : : : : : : : : : | Case No. 2:17-cv-587 |
| Plaintiff, | | Judge Graham |
| v. | | Magistrate Judge Deavers |
| NATIONAL GAS & ELECTRIC LLC, | | |
| Defendant. | | |

**PLAINTIFF'S RESPONSE TO ORDER TO SHOW CAUSE**

**INTRODUCTION**

Now comes Plaintiff Ken Johansen ("Plaintiff") and in response to the Court's Order to Show Cause entered December 20, 2017, states the following. Plaintiff's Complaint should not be dismissed because even assuming for the sake of argument that an established business relationship ("EBR") was formed on the basis of his June 13, 2017 "enrollment" over the phone with National Gas & Electric's ("NG&E's") vendor, St. Vincent, that EBR cannot extend to other calls placed to Mr. Johansen by a different telemarketing vendor (a company called "Energy Telemarketers") calling him separately to solicit him to enroll with NG&E. Those calls were placed to Mr. Johansen on June 14 through June 16, 2017. Plaintiff respectfully submits that he did not clarify the exact nature of the illegal calls he received in response to NG&E's Motion to Compel Arbitration because he did not believe his standing based on receipt of at least two illegal calls was at issue in that Motion, but he does so below to remove any confusion. To be clear, those calls were not made as follow-ups to the initial St. Vincent solicitation call to Plaintiff as the Court appears to have believed. To the contrary, they were solicitation calls for

enrollment in a new NG&E account.  Given NG&E's view at the time was that Plaintiff had already "enrolled," it makes no sense for EBR to be a potential defense.

Plaintiff further submits that the additional authority and evidence provided herein clarifies that there was nothing improper about Plaintiff posing as an interested consumer when he received illegal calls from NG&E and its vendors.  Courts and the Federal Trade Commission have endorsed this approach to unmasking the parties responsible for illegal telephone calls as a means to enforce federal law, for TCPA plaintiffs and in other contexts.

The Court need not look any further than NG&E's vendors' conduct to see that posing as an interested consumer was necessary in order to ascertain their identity and hold them and their principal responsible for their illegal calls.  NG&E's vendors simply hang up on consumers that start asking questions without showing interest in their sales pitch.  Here, when Plaintiff asked them who was calling, they told him that they were AEP (*i.e.*, American Electric Power) calling him about a discount on his AEP electric bill.  NG&E should be required to answer for its illegal telemarketing practices, and this case should proceed to discovery.

## STATEMENT OF FACTS

Plaintiff placed his residential telephone number on the National Do Not Call Registry on October 5, 2009.  (Affidavit of Ken Johansen ("Johansen Aff."), attached hereto as Exhibit 1, ¶ 2.)  He has never removed his number from the National Do Not Call Registry.  (*Id.*) Nonetheless, on June 13, 2017 a vendor for NG&E, "St. Vincent," called Plaintiff's number to solicit him to switch his electric provider to NG&E.  On June 14, 2017, through June 16, 2017, a different vendor for NG&E, "Energy Telemarketers," and NG&E itself called him numerous

times soliciting him to do the same thing without any regard to any sort of prior relationship between Plaintiff and St. Vincent or NG&E. The chronology of the calls follows.[1]

On June 13, 2017 at 12:40 PM, Plaintiff received a telemarketing call from St. Vincent (caller ID number (773) 280-7920), a vendor for NG&E, soliciting him to switch his electric provider. (Johansen Aff., ¶¶ 3-4; Ex. 2, Call 1.)

Neither St. Vincent nor NG&E had Plaintiff's consent to make that call. Attached to the Declaration of Emma Tooth as Exhibit A (Doc. 21-1) is a transcript of a call that Plaintiff believes never occurred and was fraudulently created. NG&E sent Plaintiff a purported recording of this call, but the recording sounds to his ears to have been pieced together using other recordings of his voice, resulting in a choppy, unnatural exchange, particularly towards the end of the recording where Plaintiff purportedly gives "consent" to be called. Plaintiff has asked NG&E for the date and time of the call so that he could verify it against his own and his phone company's records, but NG&E has refused to provide this information. (Johansen Aff., ¶¶ 18-19.) In any event, even if the unverified purported recording constituted consent, it only references allowing cable companies to place phone calls about cable services. This purported "consent" is not valid consent for an electric company to call him with a telemarketing pitch to switch his electric provider. *See Aderhold v. car2go N.A., LLC,* No. C13-489RAJ, 2014 U.S. Dist. LEXIS 26320, at *1 (W.D. Wash. Feb. 27, 2014) ("A person's 'prior express consent' to receive communications from one entity is not 'prior express consent' to receive communications from another entity."). Moreover, oral consent is not sufficient under the TCPA to make calls to numbers on the Do Not Call Registry. *See* 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2)(ii).

---

[1] A summary of the calls received by Plaintiff that are relevant to this lawsuit is attached hereto as Exhibit 2 and includes an index for the Court's reference.

3

In order to ascertain the identity of the companies responsible for making the illegal call to him on June 13, 2017 so that they could be held responsible, Plaintiff remained on the line and engaged with the telemarketer by posing as a customer, as he typically does when he receives illegal phone calls. (Johansen Aff., ¶¶ 4-5.) In his experience, if telemarketers sense that he is not going to become a customer for them, they generally disconnect, which frustrates his ability to ascertain the company or companies responsible for the call and any agency relationship that may exist amongst them. (*Id.*, ¶ 5.) Plaintiff directs the Court's attention to an allegation in his and proposed co-Plaintiff Jon Frey's (another individual NG&E called whose number is on the Do Not Call Registry) proposed First Amended Complaint[2] to see that National Gas's vendors simply hang up on consumers that are not as savvy as Mr. Johansen (or Mr. Frey). Plaintiff quoted an online complaint from a consumer who stated:

> Utility scam—wants to provide the delivery portion of the bill.
> Calls all the time.
> *Caller: Wrightstown NJ*
>
> I just answered a call from this number. The caller said she was from Choice ? Natural Gas asking about my natural gas provider. Background noise was unusual. Didn't sound very professional. I asked who she was calling for and she said "the person who pays the electric bill."
>
> This phone # is Choice Natural gas asking to switch with a 30% reduction…what a bunch of bull. **When I started asking questions…woman hung up.** Will report to FTC + plus block call.

(*See* Doc. 24-1, Proposed First Amended Complaint, ¶ 27 (emphasis added).)

---

[2] Upon NG&E's objection on jurisdictional grounds, Plaintiff withdrew the Motion for Leave to Amend the Complaint, but Jon Frey's claim is further evidence that Plaintiff's experience was not an isolated incident that he manufactured. Other individuals besides Mr. Frey and Mr. Johansen have also contacted Plaintiff's counsel about receiving illegal calls from NG&E in violation of the TCPA, even after this lawsuit was filed. In fact, Plaintiff's counsel also represents one of these individuals, James Shelton (whose number is also on the Do Not Call Registry), in litigation against NG&E in the Eastern District of Pennsylvania, Case No. 17-cv-4063, for violating the TCPA's automated calling provisions.

Indeed, to ascertain the identity of a telemarketing vendor and their principal is not a simple task—in Plaintiff's experience, telemarketers are often reluctant to provide this information and frequently misrepresent their company and/or the company on whose behalf they are calling. (Johansen Aff., ¶ 5.) The Court need not look any further than Plaintiff's experience in this case for examples of such misrepresentations. As is set forth more fully below, an NG&E vendor lied to Plaintiff on multiple occasions about their company and who they were calling on behalf of, attempting to deceive Plaintiff and other consumers into believing the call was coming from their electric provider (here, AEP) itself (or "Choice Energy"—a "department for AEP") and was in regards to a "discount on their electric bill." It was not until NG&E called him back that he was finally told the calls were on behalf of National Gas & Electric.

The telemarketer on the June 13, 2017 call asked Plaintiff to confirm whether 8822 Turin Hill Court, Dublin, Ohio 43017 was his address, and Plaintiff did so. (*Id.*, ¶ 8; Ex. 2, Call 1.) The telemarketer, however, had incorrect information. (Johansen Aff., ¶ 8.) In such cases, Plaintiff simply confirms whatever information the telemarketer has for him. (*Id.*, ¶ 6.) In Plaintiff's experience, to do anything else raises a red flag to the telemarketer, prompting the telemarketer to disconnect in an attempt to frustrate his ability to file a lawsuit. (*Id.*) 8822 Turin Hill Court was Plaintiff's former address, but he moved from that address in July 2013. (*Id.*, ¶ 8.)

This call unexpectedly disconnected. (*Id.*, ¶ 10.) Plaintiff does not know the reason. Plaintiff owns equipment to record the telemarketing calls that he receives so that the recordings may be used as evidence, but his recorder was not functioning consistently throughout June 2017. (*Id.*, ¶ 7.) He therefore does not have a recording of this June 13, 2017 call or the other

5

calls that occurred on that date. (*Id.*) However, NG&E and St. Vincent likely have such recordings, and they have already been requested in discovery.

Plaintiff called the caller ID number back, but the duration of the call was only one second, which Plaintiff believes indicates that the call did not go through because the caller ID was not a working number. (*Id.*, ¶ 10; Ex. 2, Call 2.) St. Vincent called him back from that same caller ID and continued to guide Plaintiff through the process of "enrolling" with NG&E. (Johansen Aff., ¶ 10; Ex. 2, Call 3.) The call began with a telemarketing representative confirming and requesting various pieces of information, including information from Plaintiff's electric bill. (Johansen Aff., ¶ 9.) Plaintiff provided NG&E an obsolete account number from an old account of his with AEP because he had no intention of becoming an NG&E customer. (*Id.*) Once the representative had all of the required information, the representative remained on the line with Plaintiff while an automated voice took command of the call and guided him through the enrollment process. (*See id.*, ¶ 11; Doc. 21-3, Declaration of Emma Tooth, Ex. C.) This part of the call is attached to the Declaration of Emma Tooth as Exhibit C (Exhibit C is not the entire call). The automated voice requested confirmation of various items, such as Plaintiff's name, phone number and address, his account number with his electric provider, whether he had additional accounts, the date and time, and whether Plaintiff consented to the call being recorded. (Doc. 21-3.)

The automated voice proceeded to explain NG&E's pricing and monthly fee, and sought confirmation from Plaintiff that NG&E was authorized to perform tasks and obtain information necessary until his new electric rate was effective. (*Id.*) Plaintiff ultimately "enrolled" with NG&E on the call and was given a confirmation number. (Doc. 21-3; Johansen Aff., ¶ 12.) Despite already "enrolling" on June 13, Plaintiff received additional telemarketing calls from

6

NG&E over the next few days, June 14, 15, and 16. (Johansen Aff., ¶ 13.) Plaintiff did not believe those calls were relevant to the Motion to Compel Arbitration, so he did not describe them in more detail, but he has transcribed them for the Court's benefit and attached them to the Declaration of Jonathan P. Misny (attached hereto as Exhibit 3) as Exhibits A through F.

Those telemarketing calls came from a different vendor for National Gas & Electric, Energy Telemarketers, Inc. ("Energy Telemarketers")[3] (caller ID (240) 815-9026), not St. Vincent. However, Plaintiff did not know that it was Energy Telemarketers that made the call until National Gas & Electric provided him that information in this lawsuit. At no point did Energy Telemarketers ever identify their company or that they were calling on behalf of NG&E.

On the first call he received from Energy Telemarketers, Plaintiff asked the Energy Telemarketers representative at the end of the call:

> **Energy Telemarketers**: The verifier is gonna call you back.
> **Johansen**: Okay. And who is that gonna be?
> **Energy Telemarketers**: Okay. He's gonna give you a call in the next three to four minutes. The enrollment specialist.
> **Johansen**: Okay. Do you know what company that will be?
> **Energy Telemarketers**: Of course, yes. They're the generations firm for the AEP electric.
> **Johansen**: Okay, so AEP is gonna call me?
> **Energy Telemarketers**: The Choice Energy Department is in charge of the AEP electric discount.
> **Johansen**: Okay, so Choice Energy is gonna call me?
> **Energy Telemarketers**: Yes, sir.
> **Johansen**: Okay.
> **Energy Telemarketers**: They're the generations firm for the AEP.
> **Johansen**: Okay, and are you Choice Energy?

---

[3] Plaintiff has recently learned through discovery in other litigation in the Northern District of Illinois, Case No. 1:17-cv-3604, that Energy Telemarketers has also made other illegal telemarketing calls to him on behalf of a different energy company, Santanna Natural Gas Corporation dba Santanna Energy Services. Those calls are distinct from the calls at issue in this litigation but further demonstrate the need to play the role of potentially interested customer to identify the company contacting him illegally.

7

>**Energy Telemarketers**: Yes, sir.

(20170614202753-I-2408159026 copy.wav[4]; Misny Declaration, Ex. A; Ex. 2, Call 4.)

On this call, the Energy Telemarketers representative verified Plaintiff's information so that another company, which Plaintiff now understands is NG&E (not AEP or "Choice Energy"), could call him back and take him through the enrollment process. NG&E (caller ID (708) 318-4984) called him twice, presumably to follow up on this call, but the calls went to voicemail and no messages were left. (Ex. 2, Calls 5-6.)

The next day, June 15, Johansen received another telemarketing call from Energy Telemarketers (same caller ID as before, (240) 815-9026). (Ex. 2, Call 7.) The telemarketer asked him for his residential service ID number on his electric bill. Then the following exchange occurred:

>**Johansen**: Okay, before I share that, can I know who you are?
>**Energy Telemarketers**: Okay, sir. My name is Susan Brandy. I'm from—
>**Johansen**: Brandy?
>**Energy Telemarketers**: I'm from the energy— Yes. Susan Brandy.
>**Johansen**: Okay. And, and what company are you?
>**Energy Telemarketers**: AEP. We called you last year to activate your discount for your bill.
>**Johansen**: You're, you're AEP? Okay.
>**Energy Telemarketers**: Actually sir, the discount's for you on the bill.
>**Johansen**: Okay.
>**Energy Telemarketers**: We promised to call you back this year. Do you remember that, sir?

(20170615114512-I-2408159026 copy.wav; Misny Declaration, Ex. B.)

Again, NG&E's vendor misrepresented their company and made no mention that the call was being made on NG&E's behalf. Not only did Energy Telemarketers not admit the call was

---

[4] Audio files cited herein will be referred to by filename. Transcripts of all audio recordings cited herein are attached to the Misny Declaration submitted herewith. Plaintiff has separately filed a motion for leave to manually file the audio recordings. (*See* Doc. 34.)

on NG&E's behalf, the telemarketing representative actually went through great pains to *avoid* identifying NG&E. Instead, Energy Telemarketers told Plaintiff that he would have to accept a call back in order to find out who a mystery "supplier for AEP" was:

> **Energy Telemarketers:** Yes. Your supplier is going to call you right now. So when they call you—
> **Johansen**: Okay.
> **Energy Telemarketers**: They're going to ask you your name, your address, and your zip code—
> **Johansen**: Okay.
> **Energy Telemarketers**: And at the end of everything, they're going to give you a confirmation number. Okay?
> **Johansen:** Okay. And I didn't understand what—
> **Energy Telemarketers:** Yeah.
> **Johansen:** What company is going to call me now?
> **Energy Telemarketers:** The supplier for AEP is gonna call you.
> **Johansen:** Yeah, do you know what company that is?
> **Energy Telemarketers:** Yes. So they're going to ask you your name, the name on your bill, is that the Wayne Johansen?
> **Johansen:** Yes, but I still don't understand who's going to call me?
> **Energy Telemarketers:** The supplier for AEP.
> **Johansen:** I know, but what company is that? Yeah, what company is that?
> **Energy Telemarketers: When they call you, they're going to tell you their name, okay?**
> **Johansen: You can't tell me their name?**
> **Energy Telemarketers:** My job is to call you, verify the information correctly, and pass you back to them.
> **Johansen:** Okay, but you can't tell me who is going to call me.
> **Energy Telemarketers:** The Energy Choice Department is going to call you, okay, for AEP.
> **Johansen:** Okay, Energy Choice is going to call me then.
> **Energy Telemarketers:** Yes, sir.
> **Johansen:** Okay good. I'll know who to expect then. Thank you.

(*Id.* (emphasis added).)

An "enrollment specialist" from NG&E (caller ID (708) 318-4984) followed up on this call and attempted to enroll Plaintiff with NG&E (despite the fact that he already "enrolled").

9

(Ex. 2, Call 11.)  NG&E did eventually identify itself, after attempting to suggest that it was affiliated with AEP:

> **Johansen:** What company are you?
> **NG&E:** This is the licensed supplier to—the licensed supplier to, um, AEP.
> **Johansen:** Okay, and what company is that?
> **NG&E:** National Gas & Electric.

(20170615133632-I-7083184984 copy.wav; Misny Declaration, Ex. D.)

The enrollment specialist for NG&E did not make any reference to the fact that Plaintiff had previously enrolled, the enrollment confirmation number that he had previously been given after "enrolling" on June 13, or that they were calling because of that enrollment.  The representative began to take Plaintiff through the enrollment process and told him that once he was enrolled, he would receive a confirmation number.  The representative then proceeded to call the same TPV Verification system as was called to finalize his enrollment on June 13, but the call broke up shortly thereafter.  Plaintiff remained on the line, but the enrollment was never completed.  Plaintiff attempted to call the caller ID number back, but it did not appear to be a working number.  (Ex. 2, Call 12.)  He received several more calls from NG&E, but they went to voicemail, and NG&E did not leave a message.  (Ex. 2, Calls 13-17.)

Plaintiff then received another telemarketing call from Energy Telemarketers (same caller ID as before).  This call was not answered, and Energy Telemarketers did not leave a message. (Ex. 2, Call 18.)  Energy Telemarketers called Plaintiff again, and Plaintiff answered.  (Ex. 2, Call 19.)  Susan Brandy, the same telemarketer as before, was calling, but she was calling for "Emma Hooka" to inform her of a "30% discount on her electric bill."  (20170615145509-I-2408159026 copy.wav; Misny Declaration, Ex. E.)  When Susan Brandy began to confirm Ms. Hooka's information according to the same script she previously used with Plaintiff, Plaintiff

10

informed her she was calling the wrong person and that he was Ken Johansen. Ms. Brandy then told him that the supplier would call him back to complete the enrollment. NG&E then called him back and enrolled him according to the same script as the enrollment call on June 13. (Ex. 2, Call 20; 20170615152244-I-7083184984 copy.wav; Misny Declaration, Ex. F.) Plaintiff was given a new enrollment confirmation number. No reference was made to the fact that he had already enrolled or his prior enrollment confirmation number.

On June 16, 2017[5], Plaintiff sent a letter to NG&E informing it of its violations of the TCPA and requesting any evidence of his purported consent to receive the calls. (*See* Johansen Aff., ¶ 17, Ex. B.) On June 27, 2017, Emma Tooth, NG&E's Regulatory and Compliance Supervisor, provided Plaintiff via e-mail a call recording and transcript (the same as attached to her Declaration as Exhibit A) that, as described above, does not constitute evidence of consent under the TCPA and which Plaintiff believes is fraudulent, particularly given NG&E has refused to provide the time the alleged call occurred. Plaintiff responded via e-mail on June 27, 2017, stating, "please cancel any service enrollments I may have with your company" in order to make sure that there were no lingering enrollments or agreements with NG&E resulting from his enrolling with the company to identify the source of the illegal telemarketing calls. (*See* Doc. 21-6, Tooth Dec., Ex. E; Johansen Aff., ¶ 21.)

---

[5] Plaintiff received two additional calls from NG&E on June 16, 2017, which according to his recollection were sign up calls (the first call was not answered, the second had a duration of 9:08), but he does not have recordings or notes about those calls. (Ex. 2, Calls 21-22.) NG&E likely has recordings of the calls, and they have been requested in Plaintiff's discovery requests.

# LAW AND ARGUMENT

**I.    The telemarketing calls from Energy Telemarketers were not made on the basis of an established business relationship.**

Even assuming for the sake of argument that Plaintiff "enrolling" with NG&E over the phone on June 13 on a telemarketing call from St. Vincent created an EBR, that EBR would be with St. Vincent and NG&E. It would not extend to a different telemarketing vendor, such as Energy Telemarketers, calling him in an attempt to initiate a new enrollment as opposed to following up on the prior one.

As the Court recognized in its Opinion and Order, an Established Business Relationship is:

> formed by a voluntary two-way communication between a person or entity and a residential subscriber with or without an exchange of consideration, *on the basis of the subscriber's purchase or transaction* with the entity within eighteen (18) months immediately preceding the date of the telephone call *or on the basis of the subscriber's inquiry or application* regarding products or services offered by either entity within the three months immediately preceding the date of the call, which relationship has not been previously terminated by either party.

Doc. 33, Opinion and Order, at 5 (citing 47 C.F.R. § 64.1200(f)(5)) (emphasis in original). Accordingly, there must be a voluntary two-way communication *on the basis of* the subscriber's purchase, transaction, inquiry, or application for the defense to apply. *See also In the Matter of Rules & Regulations Implementing the Tel. Consumer Protection Act of 1991*, 18 F.C.C. Rcd. 14014, at ¶ 115 (2003) ("emphasiz[ing]" that the voluntary two-way communication required must be "regarding" the purchase or transaction or inquiry or application).

Additionally, "[a]ny seller or telemarketer using the EBR *as the basis* for a telemarketing call must be able to demonstrate, with *clear and convincing evidence*, that they have an EBR with the called party." *Id.* (emphasis added).

12

The FCC has also made clear that an EBR with one company does not extend to all affiliates, vendors, and/or contractors of that company.  The EBR does not extend to an affiliated entity unless the call recipient "would reasonably expect [it] to be included given the nature and type of goods or services offered by the affiliate and the identity of the affiliate.  *See In the Matter of Rules & Regulations Implementing the Tel. Consumer Protection Act of 1996*, 20 F.C.C. Rcd. 10071 (2005) (citing 47 C.F.R § 64.1200(f)(5)(ii)).  The FCC has further clarified that with regard to the consumer's reasonable expectations of which companies will call them, "[a] call from a *company with which a consumer has not formed a business relationship directly, or does not recognize by name*, would likely be a surprise and possibly an annoyance" and the call would therefore not be subject to an EBR defense.  18 F.C.C. Rcd. 14014, at ¶ 117 (emphasis added).  *See also Telemarketing Sales Rule*, 80 Fed. Reg. 77520, 77556 (Dec. 14, 2015) (to be codified at 16 C.F.R. 310) ("In adopting the amendments, the Commission again wishes to emphasize that each of the carve outs is limited to the specific seller that obtained the EWA [express written agreement] directly from, or has an EBR directly with, the person called.  Consequently, cold calls to consumers whose names and numbers appear on a calling list purchased from a third-party list broker are prohibited by the TSR's do-not-call provisions because the calls are not placed by the specific seller that obtained the EWA or EBR.")  In contrast, an EBR with a seller would extend to the seller's agent where the agent is performing customer service related functions, but here, that was not the case.  *See In the Matter of Rules & Regulations Implementing the Tel. Consumer Protection Act of 1991*, 20 F.C.C. Rcd. 13664, at ¶ 6 (2005) (EBR extended to State Farm "exclusive agents" where they "perform[ed] the same services for State Farm as employees of companies that "in-source" customer service functions").

NG&E therefore cannot use the EBR exception for the calls from Energy Telemarketers on June 14 forward. The calls were not made on the basis of or were otherwise regarding Plaintiff's prior "enrollment" with NG&E on the St. Vincent call. In fact, these new telemarketing calls were solely made to attempt to enroll Plaintiff with NG&E, which would not have been logical if the calls were made on the basis of the prior telemarketing communications. Furthermore, there was no reasonable basis for Plaintiff to expect that a completely different telemarketing vendor (Energy Telemarketers) soliciting him to initiate a separate enrollment would be included in any EBR that resulted from him "enrolling" with NG&E on the call from St. Vincent. The calls from Energy Telemarketers were certainly a "surprise" to Plaintiff given they were placed by a "company with which a [he had] not formed a business relationship directly, [and he did] not recognize [them] by name" as being affiliated with NG&E. 18 F.C.C. Rcd. 14014, at ¶ 117.

If these solicitations from Energy Telemarketers were really follow-up calls from NG&E on the basis of or regarding Plaintiff's enrollment, it would stand to reason that the telemarketers would have least identified NG&E as the company on whose behalf they were calling, but they did not—when asked for this information, they told Plaintiff they were affiliated with or actually *were* AEP. When the callers from Energy Telemarketers and the enrollment specialists from NG&E itself called Plaintiff, they appeared to be completely unaware of the fact that Plaintiff had already purportedly enrolled on the call with St. Vincent. Indeed, NG&E enrolled him a second time according to the same script as the initial enrollment. If these calls were really follow-up calls on the basis of an EBR, it would stand to reason that either Energy Telemarketers or NG&E would make some indication that Plaintiff had already enrolled, but they made none whatsoever. There is no evidence the EBR exception applies to dismiss Plaintiff's claims, far

14

from the clear and convincing evidence that NG&E will ultimately need to prove if it chooses to assert the EBR exception.

## II. Courts have endorsed posing as an interested consumer as a means of enforcing federal law, including the TCPA.

While there *is* something wrong with NG&E's vendor lying to Plaintiff about their company and who they were calling on behalf of (that in fact is a violation of TCPA regulations in and of itself[6]), and with NG&E providing him a fraudulent recording of his alleged consent to receive its telemarketing calls, there is nothing wrong with a consumer advocate posing as an interested customer in order to enforce federal law.

Indeed, "testers," who pose as interested individuals in order to identify other victims in the housing and employment context, "usually are praised rather than vilified." *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 954 (7th Cir. 2006) (citing *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 374-75 (1982); *Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252 (1977)).

The same is true outside the housing and employment context. The Federal Trade Commission, which is charged with enforcement of federal telemarketing laws, regularly has investigators pose as potential customers, and this Court has endorsed that approach. *See, e.g.,* Consent Decree, *United States v. Credit Bureau Collection Servs.*, No. 2:10-cv-169, Doc. 3, § X (S.D. Ohio Feb. 24, 2010) (Marbley, J.) (authorizing FTC to use "lawful means," including

---

[6] The Federal Communications Commission has ruled that telemarketers are to identify their company when making a telemarketing call: "We continue to believe that it is in the best interest of residential subscribers and telemarketers that full identification of the soliciting caller be provided in the course of a telephone solicitation. We do not agree with the commenters' contention that providing this information is burdensome to telemarketers .... Residents should receive the information without having to demand it or to remember to ask for it. The burden of determining precisely which office within a telemarketing entity, or which office among several affiliated entities, has placed a call would otherwise fall to the resident."
https://transition.fcc.gov/Bureaus/Common_Carrier/Orders/1995/fcc95310.txt (last visited January 19, 2018).

15

"posing as consumers and suppliers" in order to monitor and investigate compliance with federal law). TCPA plaintiffs are permitted to engage in the same conduct:

> Cognizant of how damaging May's evidence is, Defendants disparage her as a "professional litigant" who "earns her living by selling things on eBay and by being a plaintiff in class action TCPA lawsuits." 12/14/15 Tr. at 41. (They neglect to mention that she is also supported by her spouse. Doc. 100-3 at 5-6.) According to Defendants, Mey's statements should be ignored because she often misrepresented to telemarketers that the name "Lifewatch" appeared on her caller identification in order to elicit their connection to Lifewatch. Doc. 100 at 16. But the telemarketers' admissions are not rendered invalid just because Mey (successfully) tricked them into (truthfully) revealing that they sold products for Lifewatch.

*FTC v. Lifewatch Inc.*, 176 F. Supp. 3d 757, 771 (N.D. Ill. 2016). Similarly, in order to combat illegal telemarketing, the American Association of Retired Persons engaged individuals in "Operation Senior Sentinel," where members were trained to "play[] the role of the intended recipient" and given tape recorders to use in order to expose telephone scammers, resulting in hundreds of arrests in coordination with the FBI.[7]

Private TCPA lawsuits are not treated any differently—posing as an interested consumer is an approach endorsed by courts in order to ascertain the identity of the calling party and hold them responsible. The Middle District of Tennessee, for example, has explained:

> The calls show that Cunningham appears to have been very good at eliciting information from the callers that he could later use in this lawsuit, which the RRMS Defendants suggest demonstrates that he was cultivating a TCPA claim. Cunningham's Second Amended Complaint, though, **openly admits that the reason he eventually accepted one of the calls was "to ascertain the identity of the party placing" them, and Cunningham has explained his sleuthing in significant detail himself. (Doc. No. 57 at ¶ 13.) His later pleadings are entirely straightforward that he was in fact cultivating a claim. (Doc. No. 85 at 10 ("The only reason why the Plaintiff faked interest in the calls was to identify the seller of goods/services that was behind the calls."))**

---

[7] *See* https://www.justice.gov/archive/opa/pr/Pre_96/December95/609.txt.html (last visited January 15, 2018).

> **… [I]t is safe to say that, when the telemarketers in this case called a phone belonging to Cunningham, they—presumably unwittingly—found themselves in the sights not of an ordinary hapless consumer, but a seasoned plaintiff, likely primed and ready to take them to court if their actions violated the TCPA. Nothing in the Constitution, though, requires a plaintiff to be a naïf.**

*Cunningham v. Rapid Response Monitoring Servs.*, 251 F. Supp. 3d 1187, 1194-95 (M.D. Tenn. 2017) (emphasis added).

By posing as an interested consumer, Plaintiff essentially acted as a private attorney general, which is exactly what the TCPA was designed to encourage consumers to do. The TCPA and the statutory damages it offers plaintiffs are "specifically designed to appeal to plaintiff's self-interest and to direct that self-interest toward the public good" with statutory damages operating as rewards, or "bounties," for catching telemarketers engaged in illegal practices to them. *Id.* at 1195. *See also Charvat v. Echostar Satellite, LLC*, 630 F.3d 459, 461 (6th Cir. 2010) ("Phillip Charvat has not been shy in taking on the role of a private attorney general under the [TCPA]."); *Universal Underwriters Ins. Co. v. Lou Fusz Auto. Network, Inc.*, 401 F.3d 876, 881 (8th Cir. 2005) (private right of action under TCPA demonstrates Congressional intent to incentivize aggrieved parties to act as "private attorneys general"); *Mey v. Venture Data,* 245 F. Supp. 3d 771, 784 (N.D.W. Va. 2017) ("While [defendant] is understandably frustrated by Ms. Mey's efficacy, she is doing exactly what Congress intended—enforcing the law.").

Plaintiff did not entrap NG&E—he registered his number on the Do Not Call Registry, answered the phone when it rang, and played along with the sales pitch on the other end of the line to identify the companies responsible. When National Gas & Electric called Ken Johansen, they found themselves in the hands not of an unwitting consumer but someone ready and willing

17

to take them to task for violating the TCPA.  The TCPA encourages plaintiffs like Ken Johansen to act as private attorneys general, and his efforts to do so and hold NG&E responsible for ignoring the Do Not Call Registry should be commended.

## CONCLUSION

For the foregoing reasons, discovery in this case should proceed, and National Gas & Electric should be required to answer or otherwise plead in response to Plaintiff's Complaint.

Respectfully submitted,

**/s/ Brian K. Murphy**
Brian K. Murphy (0070654), Trial Attorney
Jonathan P. Misny (0090673)
Murray Murphy Moul + Basil LLP
1114 Dublin Road
Columbus, OH 43215
Telephone: 614.488.0400
Facsimile: 614.488.0401
E-mail: murphy@mmmb.com
         misny@mmmb.com

Anthony Paronich (admitted *pro hac vice*)
Edward A. Broderick (admitted *pro hac vice*)
Broderick & Paronich, P.C.
99 High Street, Suite 304
Boston, MA 02110
E-mail: anthony@broderick-law.com
         ted@broderick-law.com

*Counsel for Plaintiff*

<b><u>CERTIFICATE OF SERVICE</u></b>

I hereby certify that on January 19, 2018, the foregoing was filed using the CM/ECF system, which will automatically provide notice to the following by electronic means:

John L. Landolfi
Christopher C. Wager
Vorys, Sater, Seymour & Pease LLP
52 East Gay Street
Columbus, OH 43215
jllandolfi@vorys.com
ccwager@vorys.com

Michelle Pector
Ezra Church
Ben Williams
Morgan, Lewis & Bockius LLP
1000 Louisiana, Suite 4000
Houston, TX 77002
Michelle.pector@morganlewis.com
Ezra.church@morganlewis.com
Ben.williams@morganlewis.com

                                               **/s/ Brian K. Murphy**
                                               Brian K. Murphy