**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| KEN JOHANSEN on behalf of himself and others similarly situated, | |
| Plaintiff, | Case No. 2:17-cv-00587 |
| v. | Judge James D. Graham |
| NATIONAL GAS & ELECTRIC, LLC, | Magistrate Judge Elizabeth Deavers |
| Defendant. | Class Action |

**NATIONAL GAS & ELECTRIC, LLC'S REPLY TO
PLAINTIFF'S RESPONSE TO ORDER TO SHOW CAUSE**

Plaintiff Ken Johansen's Response to the Court's Order to Show Cause ("Pl.'s Resp.") confirms that his claims under the do-not-call provisions of the Telephone Consumer Protection Act ("TCPA") are not viable. Plaintiff concedes, and all of the documents and evidence submitted show, that—despite his now confessed intent and plan to sue National Gas & Electric ("NG&E")—Plaintiff returned NG&E's calls and repeatedly expressed interest in becoming a customer. He did this notwithstanding the material false information he provided in order to frustrate NG&E's good-faith attempts to confirm and verify his enrollment. Given these admissions, Plaintiff's claims should be dismissed with prejudice.

First, nothing in Plaintiff's submission rebuts the conclusion that an established business relationship was formed between Plaintiff and NG&E on June 13, 2017. Thus, NG&E cannot be liable for subsequent calls made by NG&E or on its behalf.

Second, although Plaintiff attempts to avoid dismissal by alleging that the established business relationship would not extend to calls made by a different vendor for NG&E, this

argument fails as a matter of law. But even if the Court were to treat the second vendor to call Plaintiff as a different entity, a separate established business relationship arose when Plaintiff voluntarily engaged with that vendor, and even made an outgoing call to that vendor after the call dropped, thereby continuing to express a desire to sign up for electricity service.

Third, setting aside the fact that the established business relationship exception entirely precludes Plaintiff's claims, Plaintiff had consented on March 24, 2017 to receive marketing calls from and on behalf of NG&E regarding services and products, which would include electricity. Plaintiff's unsupported claim that he does not remember the call and theory the call never occurred is not sufficient given the transcript, recording, and contemporaneous call log, all show that Plaintiff consented to receive marketing calls. Moreover, Plaintiff's dispute regarding the sufficiency of the "oral consent" that he provided is a red herring, since the law is clear that consent may be conveyed by an affirmative recorded oral response.

For these reasons and those set forth in greater detail below, this Court should dismiss Plaintiff's complaint with prejudice.

## A.    BACKGROUND

Plaintiff filed this Complaint on July 7, 2017, alleging that defendant NG&E violated the TCPA by placing calls to his telephone number despite the fact that it is registered on the national Do-Not-Call list. Complaint, ECF No. 1. In response to the motion to compel arbitration filed by NG&E, Plaintiff filed a startling and remarkable response. Pl.'s Opp'n to Mtn. to Compel Arb., ECF No. 25 ("Opp'n to Mtn. to Compel Arb."). He argued that he could not be bound by an agreement to arbitrate with NG&E because, despite his apparent enrollment with NG&E, he never intended to purchase gas from the company. *Id.* Rather, Plaintiff was simply posing as a customer in order to sue NG&E under the TCPA. *Id.* As he fully concedes, this ruse extended to providing false information to NG&E, such as a false address and old

account number, in order to frustrate NG&E's attempts to complete his enrollment and verify his purchase of electrical service. *Id.*

Although denying NG&E's motion to arbitrate, the Court's December 20, 2017 Opinion & Order, ECF No. 33 (the "Order") expressed concern about Plaintiff's actions, noting that not only did his extraordinary behavior cast serious doubt on his fitness to serve as an adequate class representative, but his admissions also undermined his individual claims.[1] Order at 5. The Court reasoned that even if NG&E made the first call to Plaintiff on June 13, the TCPA dictates that an individual does not have a cause of action unless he has "received more than one telephone call within any 12-month period" from the same entity. *Id.* (*citing* 47 U.S.C. § 227(c)(5)). Moreover, although Plaintiff alleges additional calls on June 14 and 15, those calls are excluded from the definition of a "telephone solicitation" where the caller has "an established business relationship" with the recipient. *Id.* (*citing* 47 U.S.C. § 227(a)(4)). The Court recognized that, given Plaintiff's clear inquiries and expressed desire to purchase electricity from NG&E starting with his returned call to Plaintiff on June 13 and eventual purported enrollment, Plaintiff's action provided NG&E with a reasonable belief that an existing business relationship had arisen—notwithstanding the ruse that Plaintiff now concedes he was unwittingly perpetrating on NG&E. *Id.* at 5-6. In light of Plaintiff's admissions, the Court ordered Plaintiff to show cause why his

---

[1] Plaintiff's admissions not only call into question his ability to serve as an adequate class representative. Plaintiff's concession that he "pos[ed] as an interested customer" solely to develop a lawsuit against NG&E also indicates that he lacks standing under Article III of the U.S. Constitution. Pl.'s Resp. at 2, 4. By Plaintiff's own accounting, he spent more than half an hour on the phone with NG&E on **both** June 13 and June 15 for the sole purpose of concocting this lawsuit. *See* Exhibit 2 to Pl.'s Resp.; *see also* Exhibits D and F to Exhibit 3 to Pl.'s Resp. Unlike a party receiving an unwanted call, Plaintiff invited interaction with NG&E, faking interest in enrollment, providing false information, and actually making affirmative outgoing calls to NG&E vendors. These are not the actions of an individual whose privacy interests were invaded. Plaintiff's actions demonstrate that his conversations with NG&E's vendors did "not constitute 'the nuisance, invasion of privacy, cost, and inconvenience' from which Congress intended to protect customers, *In re Rules Implementing the Tel. Consumer Prot. Act of 1991, 30 FCC Rcd. at 7979-80.*" *See Stoops v. Wells Fargo Bank, N.A.*, 197 F .Supp. 3d 782, 800 (W.D. Pa. 2016).

complaint should not be dismissed as meritless, and Plaintiff submitted a response to the Order

on January 19, 2018.  *Id.* at 6; Pl.'s Resp., ECF No. 36.

**B.     ARGUMENT**

> **1.     Plaintiff's Submission Confirms That an Established Business Relationship**
> **Was Formed between Plaintiff and NG&E on June 13, 2017.**

In its Order, the Court correctly noted that Plaintiff's relationship with NG&E fits within

the legal definition of an established business relationship, which would preclude his claims.

Order at 6.  Because of that, the Court instructed Plaintiff to show cause as to why his Complaint

should not be dismissed.  *Id.*  Plaintiff's response challenges neither the law nor the facts upon

which the Court relied in its Order. *See generally* Pl.'s Resp.  And there is no basis to do so.

A call is excluded from the definition of a "telephone solicitation" if the caller has an

"established business relationship" with the recipient of the call.  47 U.S.C. § 227(a)(4).  The

Code of Federal Regulations sets forth how an established business relationship comes to

fruition, and also details the protections conferred by an established business relationship:

> The term established business relationship for purposes of telephone solicitations means a
> prior or existing relationship formed by a voluntary two-way communication between a
> person or entity and a residential subscriber with or without an exchange of
> consideration, on the basis of the *subscriber's purchase or transaction* with the entity
> within the eighteen (18) months immediately preceding the date of the telephone call *or*
> *on the basis of the subscriber's inquiry or application* regarding products or services
> offered by the entity within the three months immediately preceding the date of the call,
> which relationship has not been previously terminated by either party.

47 C.F.R. § 64.1200(f)(5) (emphasis added).

In its Order, the Court pointed to two critical facts underlying its conclusion that

Johansen's relationship with NG&E "appears to fit within this definition": (a) that Johansen

completed the enrollment process on June 13, 2017; and (b) that he affirmatively reached out to

NG&E after having been disconnected.  Order at 2-3.  In his Response, Plaintiff confirms that

the Court is correct as to both of those key facts, either of which is fully sufficient to create the

exception. He concedes that he did, in fact, complete the enrollment process: "Plaintiff ultimately 'enrolled' with NG&E on the call and was given a confirmation number." Pl.'s Resp., at 6. Plaintiff also confirms that he affirmatively called NG&E: "Plaintiff called the caller ID number back[.]" *Id.* By affirming the two facts upon which the Court based its conclusion that his relationship with NG&E "appears to fit within th[e] definition" of an established business relationship, Plaintiff's response confirms that an established business relationship existed. As further described and demonstrated in the Declaration of Emma Tooth, the full transcript of Plaintiff's June 13, 2017 call to NG&E confirms that he was trying to get in touch with NG&E and gave every impression that he intended to sign-up for electrical service; he spent ***over 30 minutes*** going through the sign-up and enrollment process with NG&E. *See* Exhibit A, Declaration of Emma Tooth ("Tooth Decl."); *see also* Exhibits 1 and 2 to Exhibit A, Tooth Decl.

Clearly, despite his now professed concession that his actions were a ruse and his admission that he provided false information to NG&E to try to thwart successful enrollment, the facts clearly indicate that Plaintiff voluntarily pursued communication with NG&E for the ostensible purpose of becoming a customer. That conduct fits squarely within the definition of an established business relationship and requires dismissal of Plaintiff's complaint.

## 2. The Established Business Relationship Applied to All Subsequent Calls Attributable to NG&E.

An established business relationship provides an entity—as well as a third party calling on that entity's behalf—with license to call a person for a three-month or an eighteen-month window after the creation of such a relationship, depending on the particular circumstances. Plaintiff goes to great lengths to try to differentiate the calls that he received on June 13, 2017 from the calls that he received thereafter. He points out that the vendor who called him on NG&E's behalf on June 13th was different from the vendor who called him on NG&E's behalf

on June 15th.[2]  That difference, according to Plaintiff, means that any established business relationship to have been created on June 13th does not protect against calls made on the 15th.

First, Plaintiff cannot logically hold NG&E responsible for the calls of its third-party vendors and, at the same time, argue that the established business relationship does not also apply to all calls made on behalf of NG&E.  Plaintiff bases his entire argument on the notion that NG&E was the entity responsible for generating each call: "Despite already 'enrolling' on June 13, Plaintiff received additional telemarketing calls **from NG&E** over the next few days, June 14, 15, and 16."  Pl.'s Resp. at 6-7 (emphasis added).  Plaintiff cannot escape the fact that he is claiming that NG&E is the "entity" accountable for calling him from June 13 – June 16.  Thus, according to Plaintiff, the calls received after June 13th were made by the same "entity" with whom an established business relationship had already been created.[3]  The fact that different vendors may have made calls on NG&E's behalf is immaterial.

Second, the plain language of the regulations defining an established business relationship confirms that Plaintiff cannot avoid the consequences of this rule by pointing to the different vendors who reached out to him on NG&E's behalf.  An established business relationship is formed by "a voluntary two-way communication between a person or **entity** and a residential subscriber . . . on the basis of the subscriber's purchase or transaction with the **entity** . . . or on the basis of the subscriber's inquiry or application regarding products or services offered

---

[2] Plaintiff contends that up to twenty inbound calls were improperly made on NG&E's behalf.  *See* Exhibit 2 to Pl.'s Resp.  In reality, Plaintiff fails to prove that the vast majority of these calls had anything to do with NG&E.  After the established business relationship was created June 13th, only two other calls referenced by Plaintiff included any mention of NG&E.  *See* Exhibits D and F to Exhibit 3 to Pl.'s Resp.  The transcripts of the calls memorialized as Exhibits A, B, C and E to Exhibit 3 to Pl.'s Resp. are entirely devoid of a mention of NG&E.

[3] The substance of the June 15th call between Plaintiff and a telemarketer on NG&E's behalf—further illustrates that the call was being made by the same "entity" as the June 13th calls.  After asking Plaintiff to provide his name, the caller states, "Alright I just got your information right now on my desk.  And I'm gonna be the enrollment specialist that's going to assist you by activating your new low rate on your AEP Ohio bill, okay?"  *See* Exhibit D to Exhibit 3 to Pl.'s Resp. at 1.  Common sense dictates that the caller's attempt to activate a "new low rate" was possible only because a relationship had been previously established.

by the **entity**. . . ." 47 C.F.R. § 64.1200(f)(5). For Plaintiff's argument to hold water, the regulations would have needed to use in the word "caller" instead of "entity."

Furthermore, for purposes of the established business relationship rule, an "entity" encompasses the organization on whose behalf calls are made as well as a telemarketer to have placed a call on that organization's behalf. "[T]he Commission has repeatedly applied agency principles in the other direction—allowing a third party calling on behalf of a principle to invoke a privilege or exemption belonging to the principal." *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991 Broadnet Teleservices LLC Nat'l Employment Network Ass'n Rti Int'l*, 31 F.C.C. Rcd. 7394 at 7402 ¶ 16 (2016); *see id.* at 7402 ¶ 16 n.77 (quoting the 2003 TCPA Order, 18 FCC Rcd at 14083 ¶ 118, which provides that "companies often hire third party telemarketers to market their services and products," and that "those telemarketers may rely on the seller's [established business relationship] to call an individual consumer to market the seller's services and products"). Plaintiff's established business relationship with the single entity at issue—NG&E—gave NG&E the right to call Plaintiff for 18 months after the established business relationship had been created. By enrolling with NG&E on June 13th, Plaintiff engaged in a "transaction" that created an 18-month window within which NG&E, and agents acting on its behalf, could call without incurring TCPA liability. Even if Plaintiff had not enrolled, the mere act of calling NG&E on June 13 was an "inquiry" sufficient to provide an exception for three months, which also requires dismissal of Plaintiff's TCPA claims.

Finally, assuming for the sake of argument that the established business relationship formed on June 13 cannot cover calls made by the second vendor, Plaintiff clearly established a separate business relationship through its interactions with that vendor, continuing to indicate a

7

keen desire to sign up for NG&E's services (notwithstanding his knowledge that he had already completed enrollment with the company the day before). As is apparent from the information Plaintiff has submitted to the Court, at no point did Plaintiff express a desire not to be called by NG&E. Rather, the transcript of Plaintiff's conversation with NG&E's vendor on June 15th illustrates that Plaintiff desired to engage with the individual from whom he had received a call: when the line became "crackly," Plaintiff stated, "Could I call you back? Hello? Hello?" *See* Exhibit D to Exhibit 3 to Pl.'s Resp. at 6. Plaintiff did not receive a response to that question; the call unexpectedly dropped. *Id.* And then, Plaintiff affirmatively called the number from which he had received the prior call. *See* Exhibit 2 to Pl.'s Resp. at line 12.

Thus, Plaintiff's actions on June 15, 2017 mirror his actions on June 13, 2017. On both dates, he affirmatively reached out to NG&E after having been disconnected, and once his affirmative call was answered, he completed the enrollment process. *See* Exhibits D and F to Exhibit 3 to Pl.'s Resp. Plaintiff cannot avoid the fact that his actions in purposefully interacting with NG&E, enrolling for electricity, and providing false information to frustrate the finalization of his enrollment lead NG&E to believe in good-faith that he was an earnest and well-meaning potential customer, who desired to receive marketing communications in an effort to complete the sign-up process.

### 3. Even if There Were No Business Relationship Exception, Plaintiff Provided his Express Written Consent to Receive Marketing Calls for Electricity Services.

Although irrelevant to the issue of whether an "established business relationship" arose between Plaintiff and NG&E that defeats his claims, Plaintiff also argues in his response to the Order that the consent call that occurred on March 24, 2017 "never occurred" and was "fraudulently created." Pl.'s Resp. at 3. NG&E has provided (a) a copy of the recording showing that Plaintiff consented; (b) the actual audio recording so that Plaintiff can confirm his

voice; and (c) a call log showing the actual data and time that the call occurred. *See* Pl.'s Resp. at 3 (acknowledging receipt of an audio recording and written transcript of the consent call, which was attached as Exhibit A to the Decl. of Emma Tooth in support of NG&E's Mtn. to Compel Arb. and Dismiss or Stay the Case, ECF No. 21); *see also* Exhibit 3 to Exhibit A, Tooth Decl. (containing a call log, displaying date and time stamps which show that the consent call occurred on March 24, 2017). NG&E has clearly provided sufficient authentication for the consent call. *See* Fed.R.Evid. 901(a) ("To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is."). On the call, Plaintiff clearly agreed to receive marketing calls to "discuss all available products and promotions."

Plaintiff also seeks to avoid the consequences of the "consent" call by claiming that the consent call should be disregarded because consent may not be effectuated orally. But this ignores that the Federal Communications Commission, the organization charged by Congress with promulgating rules and regulations concerning the TCPA, has recognized that "consent obtained in compliance with the E-SIGN Act will satisfy the requirements of our revised rule, including permission obtained via an email, website form, text message, telephone keypress, or **voice recording**." *Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1884 ¶ 34 (2012) (emphasis added); *see also Winner v. Kohl's Dep't Stores, Inc.*, No. 16-1541, 2017 WL 3535038 at * 5-6 (E.D. Pa. Aug. 17, 2017) (concluding that "prior express consent of the called party" may be effectuated by any means set forth in the E-SIGN Act as a basis to convey consent). Thus, the March 24 consent call plainly meets the requirements of the TCPA for prior written consent and defeats Plaintiff's claims entirely.

## CONCLUSION

For each of the reasons stated above, Plaintiff has failed to show cause as to why the Complaint should not be dismissed. NG&E respectfully ask that the Court dismiss Plaintiff's claims with prejudice.

Dated: February 2, 2018    Respectfully submitted,

        /s/ *John L. Landolfi*
        John L. Landolfi (0042208), Trial Attorney
        jllandolfi@vorys.com
        Christopher Charles Wager (0084324)
        ccwager@vorys.com
        VORYS, SATER, SEYMOUR & PEASE LLP
        52 East Gay Street
        Columbus, OH 43215
        Tel.: 614.464.6400
        Fax: 614.464.6350

        Michelle Pector
        michelle.pector@morganlewis.com
        Benjamin D. Williams
        benjamin.williams@morganlewis.com
        MORGAN, LEWIS & BOCKIUS LLP
        1000 Louisiana Street, Suite 4000
        Houston, TX 77002
        Tel.: 713.890.5200
        Fax: 713.890.5001

        Ezra Dodd Church
        ezra.church@morganlewis.com
        Andrew W. Katz
        andrew.katz@morganlewis.com
        MORGAN, LEWIS & BOCKIUS LLP
        1701 Market Street
        Philadelphia, PA 19103-2921
        Tel.: 215.963.5000
        Fax: 215.963.5001
        *Attorneys for Defendant National Gas & Electric.*

## CERTIFICATE OF SERVICE

I hereby certify that on February 2, 2018, I electronically filed the foregoing Reply and related documents with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ John L. Landolfi*
John L. Landolfi