IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

KEN JOHANSEN, on behalf of himself and
others similarly situated,

        Plaintiff,

v.

NATIONAL GAS & ELECTRIC LLC,

        Defendant.

Case No. 2:17-cv-587

Judge Graham

Opinion and Order

Plaintiff Ken Johansen brings this putative class action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. Johansen alleges that his residential telephone number is on the national Do Not Call Registry and that defendant National Gas & Electric LLC ("NG&E") violated the Act by calling him multiple times in June 2017.

This matter is before the court on plaintiff's response to the court's order to show cause why this action should not be dismissed as meritless. For the reasons stated below, the court finds that plaintiff has not shown cause and that this action should be dismissed.

I.     The Show Cause Order

The court's show cause order was precipitated by the filing that plaintiff made in response to NG&E's motion to compel arbitration, which the court denied. Plaintiff submitted an affidavit stating that after NG&E first contacted him by telephone on June 13, 2017, he called NG&E back to express interest in its services and ultimately completed the enrollment process to seemingly become one of its electric customers. Plaintiff, in seeking to avoid the arbitration provision of the NG&E contract, argued that there never was a contract because he knowingly provided incorrect information to NG&E. Plaintiff admitted in his affidavit that he supplied a false address and false account number. Thus, even though the NG&E representative on the telephone would have believed that plaintiff was enrolling, plaintiff "knew that no matter what happened, he would not receive NG&E's services." Doc. 25 at 9.

The court found that plaintiff's factual admissions cast doubt on the viability of his lawsuit:

> [A]n individual does not have a cause of action until he has received "more than one telephone call within any 12-month period" from the same entity. 47 U.S.C.

1

§ 227(c)(5) (pertaining to the Do Not Call Registry).  Although Johansen alleges that NG&E called him again on June 14 and 15, a call is excluded from the definition of a "telephone solicitation" if the caller has "an established business relationship" with the recipient of the call.  Id. at § 227(a)(4).

An established business relationship is "formed by a voluntary two-way communication between a person or entity and a residential subscriber with or without an exchange of consideration, *on the basis of the subscriber's purchase or transaction* with the entity within the eighteen (18) months immediately preceding the date of the telephone call *or on the basis of the subscriber's inquiry or application* regarding products or services offered by the entity within the three months immediately preceding the date of the call, which relationship has not been previously terminated by either party."  47 C.F.R. § 64.1200(f)(5) (emphasis added).

Johansen's relationship with NG&E appears to fit within this definition both because he completed the enrollment process on June 13 (the purchase or transaction) and because he, after getting disconnected from the initial phone call, called back to inquire about completing the process for enrolling in NG&E's services (the inquiry or application).  Johansen may have privately understood that his purchase and inquiry were not in earnest and that he would not receive NG&E's services.  But his deceptive conduct gave NG&E an objectively reasonable basis for believing that he had established a business relationship with NG&E on June 13.

Doc. 33 at 5-6.

## II. Plaintiff's Response

In response to the show cause order, plaintiff stands by the factual admissions he made in his earlier affidavit.  He does not dispute or challenge the court's provisional conclusions that an established business relationship was created between plaintiff and NG&E on June 13, 2017 and that the June 14 and 15 calls from NG&E are excluded from the definition of a "telephone solicitation" under the TCPA.

Plaintiff instead argues that NG&E committed a separate TCPA violation during the same timeframe based on a different series of calls.  Plaintiff contends that the June 13 to 15 calls discussed in the show cause order were made on NG&E's behalf by a telemarketing vendor named St. Vincent.  He claims that another third-party vendor named Energy Telemarketers ("ETM") called him on June 14, 2017 to solicit him to enroll with NG&E.  He received additional calls from ETM and NG&E on June 15 and 16, and he argues that these calls violated the TCPA.

2

## III. Standard of Review

The court reviews plaintiff's response to the show cause order as it would review a matter under Rule 56(f) of the Federal Rules of Civil Procedure (summary judgment independent of a motion). Under Rule 56(f), a district court may consider summary judgment on its own or on grounds not raised by a party so long as the court gives the parties "notice and a reasonable time to respond." See also Employers Ins. of Wausau v. Petroleum Specialties, Inc., 69 F.3d 98, 105 (6th Cir. 1995) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986)).

Here, plaintiff has had an opportunity to respond and has come forward with a second affidavit and several exhibits in support of his position. NG&E has done the same, and the court additionally grants the parties leave to file their proposed reply and sur-reply briefs, with exhibits attached.

Under Rule 56, summary judgment is proper if the evidentiary materials in the record show that there is "no genuine dispute as to any material fact" and that one party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); see Longaberger Co. v. Kolt, 586 F.3d 459, 465 (6th Cir. 2009). The evidence, all facts, and any inferences that may permissibly be drawn from the facts must be viewed in the light most favorable to the party opposing summary judgment. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Eastman Kodak Co. v. Image Technical Servs., Inc., 504 U.S. 451, 456 (1992). A district court in this posture may not weigh evidence or make credibility determinations. Daugherty v. Sajar Plastics, Inc., 544 F.3d 696, 702 (6th Cir. 2008); Adams v. Metiva, 31 F.3d 375, 379 (6th Cir. 1994). Rather, the court must determine whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986).

## IV. Discussion

### A. The ETM-Related Calls

At about 8:30 p.m. on June 14, 2017, plaintiff received a call from ETM offering to help lower his electric bill. See Docs. 36-2, 36-4. During this call, the ETM representative verified plaintiff's address and existing account number and offered to have an enrollment specialist call him. See Doc. 36-4. Plaintiff agreed to be called back by an enrollment specialist. See id. at p. 3 ("Okay, great. Sounds good."). Within ten minutes, NG&E twice attempted to call plaintiff, but those calls went to voicemail and no messages were left. See Doc. 36-1, Johansen Aff. at ¶ 15; Doc. 36-2.

3

ETM called again on June 15 around 11:45 a.m., following the same script as the call placed the day before. See Docs. 36-2, 36-5. Again, plaintiff verified his address and account number and he responded, "Okay, sounds good," to the proposition that an enrollment specialist for the electric supplier would be calling him. See Doc. 36-5 at p. 6. NG&E attempted to call plaintiff twice within the next hour, but those calls went to voicemail and no messages were left. See Doc. 36-1, Johansen Aff. at ¶ 15; Doc. 36-2.

At about 1:30 p.m. on June 15, ETM called plaintiff, who answered. The ETM representative said that the electric supplier would try to call him shortly, and she asked plaintiff if he still had his account number handy, to which plaintiff said that he did. See Id Doc. 36-6. at p. 1.

NG&E called plaintiff a few minutes later and they engaged in conversation whereby plaintiff provided information to NG&E for purposes of enrolling with NG&E. See Doc. 36-7. However, the call got cut off before the enrollment process was completed. See id. at p. 6.

Plaintiff then tried to call NG&E back at the phone number appearing on his caller ID. See Doc. 36-1, Ex. A. His call was not answered. NG&E attempted numerous times to call plaintiff back, but he did not answer the calls. See id; Doc. 36-2.

Eventually, following an intervening call from ETM in which plaintiff again stated that it would be okay for the electric supplier to call him, NG&E called plaintiff at about 3:15 p.m. on June 15 and he answered. Docs. 36-8, 36-9. Plaintiff verified his information and completed the enrollment process to become an NG&E customer. In this call, as with all prior ones, plaintiff provided an incorrect street address and existing account number.

On June 16, NG&E called plaintiff. Plaintiff did not record or take notes of the call, but he recalls that NG&E solicited him to sign up for its services. See Doc. 36-1, Johansen Aff. at ¶ 16.

**B.     The Theory of a Different Telemarketing Vendor**

The TCPA provides a private cause of action to a "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection." 47 U.S.C. § 227(c)(5). A call to a telephone number on the Do Not Call Registry is in violation of the regulations when it is made to solicit the purchase of goods or services. 47 C.F.R. § 64.1200(f)(12). The TCPA exempts a call from the definition of a "telephone solicitation" if "the caller has an established business relationship" with the recipient of the call. 47 U.S.C. § 227(a)(4). An established business relationship ("EBR") is "formed by a voluntary two-way communication between a person or entity and a residential subscriber . . . on the

basis of the subscriber's purchase or transaction with the entity . . . [or] the subscriber's inquiry or application regarding products or services offered by the entity . . . ." 47 C.F.R. § 64.1200(f)(5).

Plaintiff argues that the ETM-related calls are not covered by the EBR which was created with NG&E as a result of the June 13, 2017 call from a different telemarketing vendor. Citing 47 C.F.R. § 64.1200(f)(5)(ii), plaintiff contends that an EBR with a company does not extend to a call from the company's affiliates, vendors or contractors unless the call is of the type the recipient would reasonably expect to receive pursuant to the EBR. According to plaintiff, the ETM-related calls were not reasonably connected to the EBR because they were not follow-up calls or offers of related services, but were new cold calls attempting to enroll him in NG&E's services.

In response, NG&E argues that the ETM-related calls are covered by the EBR because what matters under the statute is the "entity" accountable for having the calls placed. NG&E contends that both St. Vincent and ETM were calling on NG&E's behalf. Under traditional agency principles, NG&E was the entity making the calls and it had a right, by virtue of the EBR created on June 13, to make telephone solicitations to plaintiff through its telemarketing vendors.

The court finds that NG&E has correctly stated the law on this issue. The text of the TCPA focuses on the "entity" who calls or on whose "behalf" the call is made. 47 U.S.C. § 227(c)(5); see also 47 C.F.R. § 64.1200(d)(5) (providing that "a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made)"). If an individual has an EBR with an entity (as plaintiff had with NG&E as of June 13, 2017), then a call from the entity is excluded from the meaning of a "telephone solicitation" under the Act regardless of whether the call is in the nature of a solicitation. See 47 U.S.C. § 227(a)(4).

Plaintiff's argument regarding 47 C.F.R. § 64.1200(f)(5)(ii) stretches that provision beyond its actual scope. The regulation provides:

> The subscriber's established business relationship with a particular business entity does not extend to affiliated entities unless the subscriber would reasonably expect them to be included given the nature and type of goods or services offered by the affiliate and the identity of the affiliate.

47 C.F.R. § 64.1200(f)(5)(ii). Plaintiff describes the provision as applying to "affiliates, vendors and/or contractors." Doc. 36 at p. 13. But he cites no authority in support, and the text refers only to an "affiliate." Though the term "affiliate" is not defined in the TCPA or corresponding regulations, it has a clear meaning in the legal context:

> The term "affiliate" carries its own, independent legal significance. "Affiliate refers to a 'corporation that is related to another corporation by shareholdings or other

5

means of control. . . .'" Delaware Ins. Guar. Ass'n v. Christiana Care Health Servs., Inc., 892 A.2d 1073, 1077 (Del. 2006) (quoting Black's Law Dictionary 59 (7th ed. 1999)). The plain and ordinary meaning of "affiliate" supports this definition as "a company effectively controlled by another or associated with others under common ownership or control." Webster's Third New International Dictionary 35 (2002).

Satterfield v. Simon & Schuster, Inc., 569 F.3d 946, 955 (9th Cir. 2009) (footnote omitted) (analyzing the TCPA). St. Vincent and ETM were not affiliates of NG&E.

Even if there were some ambiguity, plaintiff's position is contrary to that of the Federal Communications Commission, whose interpretation of the TCPA is entitled to *Chevron* deference. See City of Arlington, Tex. v. F.C.C., 569 U.S. 290 (2013); Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984). The FCC has expressly stated that "telemarketers may rely on the seller's EBR to call an individual consumer to market the seller's services and products." In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 18 F.C.C. Rcd. 14014, 14083 ¶ 118 (2003) (footnote omitted); accord In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 20 F.C.C. Rcd. 13664, 13667 ¶ 6 (2005) ("We clarify that State Farm's exclusive agents are permitted to rely on the EBR of State Farm to make telephone solicitations on behalf of State Farm so long as State Farm has a valid EBR with the customer.") (footnote omitted). More recently, the FCC observed:

> [F]ederal common law principles of agency allow a seller to be held vicariously liable under the TCPA for calls placed on its behalf by third-party telemarketers. . . . [T]he Commission has repeatedly applied agency principles in the other direction—allowing a third party calling on behalf of a principal to invoke a privilege or exemption belonging to the principal.

In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991 Broadnet Teleservices LLC Nat'l Employment Network Ass'n Rti Int'l, 31 F.C.C. Rcd. 7394, 7402 ¶ 16 (2016) (footnotes omitted).

The FCC's approach is consistent with that of federal courts, which have looked to agency principles in applying the TCPA to questions of vicarious liability and consent. See, e.g. Gomez v. Campbell-Ewald Co., 768 F.3d 871, 877-78 (9th Cir. 2014), *aff'd*, 136 S. Ct. 663, 193 L. Ed. 2d 571 (2016), as revised (Feb. 9, 2016); Taylor v. Universal Auto Grp. I, Inc., No. 3:13-CV-05245-KLS, 2014 WL 6654270, at *5 (W.D. Wash. Nov. 24, 2014) (calls placed by third party telemarketers are treated as being made by the selling entity itself); Smith v. State Farm Mut. Auto. Ins. Co., No. 13 C 2018, 2013 WL 5346430, at *2 (N.D. Ill. Sept. 23, 2013).

Here, an EBR between plaintiff and NG&E was created on June 13, 2017. The court finds that the calls placed on NG&E's behalf by agent ETM on June 14 and 15 are excluded from the definition of a telephone solicitation. Thus, plaintiff's claim under the TCPA fails as a matter of law.

### C. Prior Express Permission

NG&E argues that even if the ETM-related calls are not exempt under the EBR created on June 13, 2017, plaintiff expressly gave his permission to ETM to be called. The court agrees.

A call is excluded from the definition of a "telephone solicitation" if it is placed "to any person with that person's prior express invitation or permission." 47 U.S.C. § 227(a)(4). When an ETM representative proposed during the June 14 call that an enrollment specialist would call plaintiff, he responded, "Okay, great. Sounds good." Doc. 36-4 at p. 3. In the calls which followed over the next several days, plaintiff never stated that he did not wish to receive any more calls. He kept agreeing to be called by an enrollment specialist and even attempted to call NG&E to complete the enrollment process when one of the calls got cut off.

The court thus finds as a matter of law that the ETM-related calls are excluded from the definition of a telephone solicitation because plaintiff gave prior express permission to be called.

### V. Conclusion

Accordingly, the court grants summary judgment to defendant NG&E and dismisses the complaint in its entirety.

s/ James L. Graham
JAMES L. GRAHAM
United States District Judge

DATE: August 16, 2018

7